UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CYNTHIA LOPEZ § <br> for JUAN ORTIZ, § <br> § <br> Plaintiff, § <br> v. § <br> § <br> JO ANNE B. BARNHART, § <br> Commissioner of the Social § <br> Security Administration, § <br> § <br> Defendant. § | CIVIL ACTION NO. <br><br> SA-05-CA-1109 FB (NN) |

**MEMORANDUM AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   Hon. Fred Biery
      United States District Judge

**I. Introduction**

Plaintiff Cynthia Lopez seeks review and reversal of the administrative denial of her application for Supplemental Security Income (SSI) benefits for her minor son, Juan Ortiz. Lopez contends that the Administrative Law Judge (ALJ) erred by failing to use Juan's most current IQ evaluation in determining whether Juan is disabled under the Social Security Act (the Act). Lopez maintains that the ALJ made errors of law that require the Court to reverse the decision of the defendant—the Commissioner of Social Security Administration (SSA)—denying Juan benefits. Lopez asks the Court to reverse the decision and to remand the case for evaluation by a medical expert.

After considering Lopez's brief in support of her complaint,[1] the brief in support of the

---

[1] Docket entry # 12.

Commissioner's decision,[2] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this case, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this Memorandum and Recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff applications for benefits for disposition by recommendation.[3]

## II.  Jurisdiction

The District Court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## III.  Administrative Proceedings

Based on the record in this case, Lopez fully exhausted her administrative remedies prior to filing this action in federal court.  Lopez filed her application on Juan's behalf on July 29, 2003, alleging disability beginning on July 1, 2003.[4]  At that time, Juan was 10 years old.  Lopez indicated in her application that Juan had problems with learning.[5]  The Commissioner denied the application initially and on reconsideration.[6]  Lopez then asked for a hearing.  A hearing was

---

[2]Docket entry # 13.

[3]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[4]SSA record, pp. 64-66.

[5]*Id*. at p. 77.

[6]*Id*. at p. 36-37.

held before the ALJ on May 20, 2005.[7]  At the time of the hearing, Juan was 12 years old and in the fifth grade.  The ALJ issued a decision on July 26, 2005, concluding that Juan is not disabled as defined by the Act and thus ineligible to receive SSI benefits.[8]  Lopez's attorney, Anthony Terracina, asked for review of the decision on August 16, 2005.[9]  The SSA Appeals Council concluded on September 19, 2005 that no reason existed to review the ALJ's decision.[10]  The decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  Lopez filed this action seeking review of the Commissioner's decision on November 14, 2005.[11]

### IV.  Issue Presented

Is the ALJ's decision that Juan was not under a "disability," as defined by the Act, at any time through the date of the decision, supported by substantial evidence and does the decision comport with relevant legal standards?

### V. Analysis

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[12]  "Substantial

---

[7]*Id*. at p. 22-35.

[8]*Id*. at pp. 12-19.

[9]*Id*. at p. 50.

[10]*Id*. at pp. 3-5.

[11]*See* docket entry # 1.

[12]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[14]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[15] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[16] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[17] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[18]

---

[13] *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[14] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[15] *Martinez*, 64 F.3d at 173.

[16] *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[17] *Martinez*, 64 F.3d at 174.

[18] *Id*.

**1. Entitlement to Benefits**

Every child under the age of 18 who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive SSI benefits.[19]  A child under the age of 18 is considered "disabled" if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,"[20] and the child does not engage in substantial gainful activity.[21]

**2. Evaluation Process**

Regulations set forth by the Commissioner prescribe that disability claims involving a child are to be evaluated according to a three-step process.[22]  A finding that the child is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[23]

The first step in the process involves determining whether the child is currently engaged in substantial gainful activity.[24]  If the child is engaged in substantial gainful activity, the child

---

[19]*See* 42 U.S.C. § 1382(a)(1) & (2).  *See also* 42 U.S.C. § 1382(e)(1)(B) & (G).

[20]42 U.S.C. § 1382c(a)(3)C)(i).

[21]*See* 42 U.S.C. § 1382c(a)(3)(C)(ii).

[22]*See* 20 C.F.R. § 416.924(a).

[23]*See id*.

[24]*See id*.

will be deemed not disabled and the child's claim will not be evaluated further.[25] The second step involves determining whether the child has a physical or mental impairment, or a combination of impairments, that is severe.[26] If the child does not have a severe impairment, the child will not be considered disabled and the claim will not be evaluated further.[27] Where the child has a severe impairment, the third step involves determining whether the child's impairment(s) meets, medically equals, or functionally equals a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1).[28] If the child does not have a listed impairment, the child will be deemed not disabled.[29] If the child has such an impairment, the child will be deemed disabled.[30]

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step three of the process. At step one, the ALJ determined that Juan had not engaged in substantial gainful activity since the filing date of the application for SSI benefits.[31] At step two, the ALJ determined that Juan had a severe impairment of borderline intellectual functioning.[32] At step three, the ALJ first determined that

---

[25] *See id*.

[26] *See id*.

[27] *See id*.

[28] *See id*. *See also* 20 C.F.R. pt. 404, subpt. P., app. 1.

[29] *See* 20 C.F.R. § 416.924(a).

[30] *See id*.

[31] *See* SSA record, p. 13.

[32] *See id*. at p. 15.

Juan's impairment—borderline intellectual functioning—does not meet or medically equal the criteria of an impairment listed in Appendix 1. The ALJ then continued his step-three analysis to determine that Juan's borderline intellectual functioning was not functionally equivalent in severity to one or more of the listed impairments. In making this determination, the ALJ observed that Juan's impairment did not result in marked limitations in two domains of functioning or an extreme limitation in one domain of functioning.[33] The ALJ opined that Juan's borderline intellectual functioning "is resolving with the improvement in his reading, spelling and mathematics"[34] and that Juan's impairment "is currently not causing any significant abnormalities in [Juan's] ability to grow and thrive. . . ."[35] The ALJ concluded that Juan is not disabled.[36]

### C. Lopez's Allegation of Error

On review, Lopez maintains that the ALJ's decision is not supported by substantial evidence. Lopez argues that the ALJ erred by failing to use Juan's most current lowest IQ score—59—in determining whether Juan meets or equals the listing in section 112.05 of the SSA's Blue Book. Although Lopez does not explain why Juan is disabled under section 112.05, she seems to suggest that section 112.05 required the ALJ to obtain a medical opinion on Juan's speech problems because Juan's most current lowest verbal IQ score falls within the range for mental retardation. Because Lopez asserts that the ALJ erred in his determining that Juan did not

---

[33]*Id*. at p. 15.

[34]*Id*. at p. 16.

[35]*Id*. at p. 17.

[36]*Id*. at p. 16.

meet or equal a listing in section 112.05, I construe Lopez's argument as challenging the first part of the third step of the ALJ's step-three analysis. Lopez does not challenge any other aspect of the ALJ's analysis.

The *Blue Book*—actually titled, *Disability Evaluation Under Social Security*—is a SSA publication "specially prepared to provide physicians and other health professionals with an understanding of the disability programs administered by the [SSA]." The *Blue Book* "explains how each program works, and the kinds of information a health professional can furnish to help ensure sound and prompt decisions on disability claims." Section 112.05 of the *Blue Book* addresses mental retardation. Section 112.05 of the *Blue Book* corresponds to section 112.05 of the listing of impairments in Appendix 1. The introductory paragraph of the section describes mental retardation as "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." The next paragraph states that the required level of severity for mental retardation is met when one of six sets of criteria is satisfied. One of those criterion is that the child has "[a] valid verbal, performance, or full scale IQ of 59 or less." "If an impairment satisfies the diagnostic description in the introductory paragraph and any one of the six sets of criteria, [the SSA] will find that the child's impairment meets the listing." Because Juan's most current verbal IQ score is 59, Lopez seems to suggest that the ALJ was required to obtain a medical opinion about Juan's speech problems. This argument fails, however, because the score of 59 was provided by a medical professional as defined by SSA regulations as an acceptable medical source[37]—here, by Dr. Wallace Boom, a licensed

---

[37]*See* DISABILITY EVALUATION UNDER SOCIAL SECURITY, pt. B, *available at* http://www.ssa.gov/disability/professionals/bluebook/evidentiary.htm.

psychologist.  Dr. Bloom's assessment, however, does not support the significance that Lopez places on Juan's verbal score.

Dr. Bloom evaluated Juan on December 19, 2003.[38]  Dr. Bloom reported that he administered the Wechsler Intelligence Scale for Children - Third Edition (WISC-III).  Dr. Bloom reported Juan's scores as follows: verbal IQ - 59, performance IQ - 95, and full scale IQ - 75.  Lopez challenges only the significance of Juan's verbal score.  Under the evaluation category of intelligence, Dr. Bloom wrote that Juan's full scale IQ score of 75 places him in the borderline intellectual functioning zone.[39]  Dr. Bloom observed that Juan's verbal score of 59 was significantly different from his performance score of 95.[40]  He characterized the verbal score of 59 as falling within the retarded range and the performance score of 95 as falling within the normal range.[41]  Dr. Bloom observed that the difference between Juan's verbal score and his performance score was 36 points—more than the 28-point difference in his scores from the same test taken on May 8, 2001.  Under Axis II,[42] Dr. Bloom diagnosed Juan as having borderline

---

[38]See SSA record, pp. 194-98.

[39]Id. at p. 197.

[40]Id.

[41]Id.

[42]"The *Diagnostic and Statistical Manual of Mental Disorders* classifies psychiatric diagnosis in five axes.  See Am. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 27 (4th ed., text revision, 2000) (hereinafter DSM-IV-TR).  Now in its fourth edition, the manual is referred to as the DSM-IV.  Axis II classifies underlying pervasive or personality conditions, developmental disorders and learning disabilities, and mental retardation.  See DSM-IV-TR at 28-29.

intellectual functioning.  Under Axis V,[43] Dr. Bloom assessed Juan as having a global assessment of functioning (GAF)[44] of 60 "with moderate difficulty in school functioning."  Dr. Bloom's assessment does not support the significance that Lopez places on Juan's verbal score because neither Dr. Bloom's Axis II or Axis V diagnosis corresponds to a listed impairment in Appendix 1.  This aspect of the ALJ's analysis is discussed further below.

The Commissioner advances a different argument for why Lopez's argument fails.  The Commissioner asserts in her brief that Juan had a subsequent verbal score of 71.  According to the Commissioner, Dr. C. Lankford, a licensed psychologist, indicated that Juan had a verbal IQ score of 71 on January 24, 2004.  This statement, however, is incorrect.  Dr. Lankford's assessment is reflected on a childhood disability evaluation form, dated January 24, 2004.[45]  On the third page of the evaluation, Dr. Lankford recorded Juan's previous test scores from the WISC-III—scores from May 2001 and December 2003.  The evaluation does not contain scores from an assessment done on January 24, 2004.  The verbal score of 59 that Lopez relies on occurred in December 2003.  The verbal score of 71 that the Commissioner relies on occurred in May 2001.  Thus, contrary to the Commissioner's argument, the score of 71 is not subsequent to the score of 59.  Even though the Commissioner's argument is flawed, the Commissioner's

---

[43] Axis V is used "for reporting the clinician's judgment of the individual's overall level of functioning."  DSM-IV-TR at 33.

[44] The global assessment of functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults.  *See* DSM-IV-TR at 32-36.  The scale is described in the DSM-IV-TR.  *See id*.  A score of 51 to 60 is used to indicate moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *See id*. at 34.

[45] *Id.* at pp. 199-205.

decision is nevertheless supported by substantial evidence.

To determine whether a child's impairment(s) meets or medically equals a listed impairment—the focus of Lopez's argument—the ALJ must consider whether the impairment is "at least equal in severity and duration to the criteria of any listed impairment."[46]  Medical equivalency exists in the following circumstances:

> (1)(i) If [the child] ha[s] an impairment that is described in the Listing of Impairments in [A]ppendix 1 . . . , but—
>
>> (A) [The child] do[es] not exhibit one or more of the findings specified in the particular listing, or
>>
>> (B) [The child] exhibit[s] all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>
>   (ii) [The SSA] will find that [the child's] impairment is medically equivalent to that listing if [the child] ha[s] other findings related to [the] impairment that are at least of equal medical significance to the required criteria.
>
> (2) If [the child] ha[s] an impairment(s) that is not described in the Listing of Impairments . . . , [the SSA] will compare [the child's] findings with those for closely analogous listed impairments.  If the findings related to [the child's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the SSA] will find that [the child's] impairment(s) is medically equivalent to the analogous listing.
>
> (3) If [the child] ha[s] a combination of impairments, no one of which meets a listing described in the Listing of Impairments . . ., [the SSA] will compare [the child's] findings with those for closely analogous listed impairments.  If the findings related to [the child's] impairments are at least of equal medical significance to those of a listed impairment, [the SSA] will find that [the child's] combination of impairments is medically equivalent to that listing.[47]

The first circumstance does not apply to Juan because borderline intellectual functioning is not

---

[46] 20 C.F.R. § 416.926(a).

[47] 20 C.F.R. § 416.926(b).

listed in Appendix 1. The third circumstance does not apply because Juan does not have a combination of impairments. The second circumstance applies because the ALJ determined that Juan has an impairment that is not listed in Appendix 1—*i.e.*, borderline intellectual functioning.

The ALJ did not explicitly compare borderline intellectual functioning to the impairments listed in Appendix 1. Such an comparison would have been difficult as no listed impairment is clearly analogous to borderline intellectual functioning. Instead, the ALJ discussed the medical evidence supporting Juan's impairment. The ALJ observed that Juan had been in English-as-a second-language classrooms since kindergarten, "[when he] had limited proficiency in English." The ALJ observed that as Juan became comfortable speaking English, "he . . . made a lot of progress and was writing sentences and had begun to have a lot of confidence when speaking or reading out loud." He discussed Juan's progress in terms of the evidence as follows:

> Dr. Bloom did not identify any problems with [Juan's] speech or his ability to be understood during testing. Additionally, Dr. Bloom noted [Juan] counted out loud from one to 20 forward and backward without any difficulty. Even though [Juan] has some problems in his Verbal testing for his IQ, Dr. Bloom reported that in view of [Juan's] Full Scale IQ [Juan] did not even meet the criteria for learning disabled. . . . Furthermore, the [SSA] contacted [Juan's] teacher on September 12, 2003, and the teacher stated that [Juan] did not have a speech problem and was not being seen by a speech specialist. [Juan's mother] stated that [Juan] had been in special education since kindergarten and she stated that he was unable to communicate well and had speech problems. However, she reported that he had not been in any speech therapy that she was aware of when she filled out the Disability Report when she applied for benefits for her son.[48]

Based on this assessment, the ALJ found that Juan's impairment did not meet or medically equal the criteria of any of the listed impairments. My review of the record supports the ALJ's analysis and conclusion.

---

[48]SSA record, p. 15.

Part B of Appendix I applies to children. Part B impairments are listed by body systems—growth impairment, musculoskeletal system, special senses and speech, respiratory system, cardiovascular system, digestive system, genitourinary impairments, hematological disorders, skin disorders, endocrine system, impairments that affect multiple body systems, neurological, mental disorders, malignant neoplastic diseases, and immune system. Only two of these body systems could apply to Juan's impairment: special senses and speech—based on Lopez's complaint about Juan's verbal score—and mental retardation—based on Juan's intellectual scores. No impairment listed under the body system of special senses and speech applies because the listed impairments that refer to speech are hearing impairments. No evidence exists that Juan has a hearing impairment.

Arguably, mental retardation is the most closely analogous impairment because clinicians use a combination of IQ tests and adaptive functioning assessments to diagnose both mental retardation and borderline intellectual functioning.[49] An individual is considered to have mental retardation if: intellectual functioning is markedly below average (IQ of 70 or less), significant limitations exist in two or more adaptive skill areas, and the condition starts before age 18.[50] An individual may be considered to have borderline intellectual functioning when his IQ score falls between 71 and 84.[51]

Appendix 1 characterizes mental retardation by significantly subaverage general

---

[49]*See* DSM-IV-TR at 41-42 (discussing the use of IQ tests to diagnose mental retardation).

[50]*See id.*

[51]*See id*. at 740.

intellectual functioning with deficits in adaptive functioning.  "*Adaptive functioning* refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting."[52]  Relevant here, Appendix 1 states that the required level of severity for mental retardation is met when the following requirement exists—"[a] valid verbal, performance, or full scale IQ of 59 or less."[53]

Although Juan has a verbal IQ score of 59, the record does not indicate that he has significantly subaverage general intellectual functioning with deficits in adaptive functioning.  Here, the any medical evidence assessing Juan's adaptive functioning is Dr. Lankford's childhood disability evaluation.[54]  In that evaluation, Dr. Lankford assessed Juan according to the SSA's criteria for assessing functional equivalency.

To determine whether a child has an impairment that is functionally equivalent to a listed impairment, the SSA assesses a child's activities in six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for self; and (6) health and physical well-being.[55]  For an impairment to qualify as functionally equal to a listed impairment, the child's impairment must result in marked limitations in two domains of functioning or an extreme limitation in one domain.

---

[52]*Id*. at 42.

[53]20 C.F.R. pt. 404, subpt. P., app. 1, pt. B, § 112.05(C).

[54]SSA record, pp. 199-205.

[55]*See* 20 C.F.R. § 416.926a(b)(1).

Dr. Lankford assessed Juan has having a less-than-marked impairment in acquiring and using information; a marked impairment in attending and completing tasks; and no limitations in interacting and relating with others, moving about and manipulating objects, caring for self, and health and physical well-being.[56] Because he found a marked limitation in only one domain, Dr. Lankford did not find that Juan's impairment was functionally equivalent to a listed impairment. In addition, Dr. Lankford opined that English as a second language was the probable reason for Juan's verbal score of 59.[57]

Dr. Lankford's assessment does not indicate that Juan's borderline intellectual functioning meets or medically equals mental retardation because it does not meet the criteria for the most closely analogous listed impairment—mental retardation. In particular, no evidence exists that Juan has significantly subaverage general intellectual functioning or significant deficits in adaptive functioning. Moreover, no other evidence in the record indicates that Juan's borderline intellectual functioning meets or medically equals mental retardation. Without such evidence, the ALJ correctly concluded Juan's borderline intellectual functioning does not meet or medically equal a listed impairment. In addition, Dr. Lankford's assessment supports the ALJ's determination that Juan's impairment does not functionally equal a listed impairment. Thus, I conclude that substantial evidence supports the ALJ's determination that Juan is not disabled for the purposes of the Act.

## VI. Recommendation

Substantial evidence supports the ALJ's determination that Juan's borderline intellectual

---

[56]SSA record, pp. 201-02.

[57]*Id*. at p. 205.

functioning does not meet, medically equal, or functionally equal a listed impairment in Appendix 1. Consequently, the ALJ correctly concluded that Juan is not disabled. Substantial evidence supports that decision. As a result, I recommend that Lopez's request for relief be **DENIED** and that the Commissioner's decision be **AFFIRMED**.

## VII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[58] **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.** A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[59] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved

---

[58] 28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

[59] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[60]

**SIGNED** on January 23, 2007.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[60] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).